**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: Family Dollar Stores, Inc.,<br>Pest Infestation Litigation | )<br>)<br>) | No. 2:22-md-03032-SHL-tmp<br>(MDL Docket No. 3032) |
| This Document Relates To: | ) | |
| ALL CASES | )<br>) | |

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CONSOLIDATED CLASS ACTION SETTLEMENT AND UNOPPOSED
MOTION TO SUBSTITUTE AND DISMISS CERTAIN CLASS REPRESENTATIVES,
PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASSES,
APPROVAL OF NOTICE PLAN, AND APPROVAL OF THE PROPOSED SCHEDULE
FOR COMPLETING THE SETTLEMENT PROCESS AND SCHEDULING A
FINAL APPROVAL HEARING**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of

Consolidated Class Action Settlement, filed on June 19, 2023. (ECF No. 155.) Plaintiffs seek

entry of an order (a) preliminarily approving the Settlement; (b) provisionally certifying the

Settlement Class under Federal Rule of Civil Procedure 23; (c) appointing ten Class

Representatives[1] and designating J. Gerard Stranch, IV, Sarah Sterling Aldridge, and Charles J.

LaDuca as Settlement Class Counsel; (d) approving the notice plan for the Settlement Class; (e)

appointing Angeion Group LLC ("Angeion") as Settlement Claims Administrator; (f) approving

the proposed schedule for completing the settlement process and setting a date for a final

Fairness Hearing. Defendants filed a Statement in Support of Plaintiffs' Motion for Preliminary

Approval of Settlement on June 30, 2023. (ECF No. 164.)

---

[1] On June 28, 2023, Plaintiffs filed an Unopposed Motion to Substitute and Dismiss
Certain Class Representatives. (ECF No. 162.) The Court also grants that motion in this Order.

On July 18, 2023, the State of Arkansas filed a Motion to Intervene, arguing that

Plaintiffs' class-action Arkansas Deceptive Trade Practices Act ("ATDPA") claims are

prohibited by Arkansas law.  (ECF No. 167.)  The Court held a hearing on that motion on August

10, 2023.  (ECF No. 179.)  On August 30, 2023, the Court granted the Motion to Intervene and

allowed Arkansas to file a supplemental brief objecting to the settlement.  (ECF No. 182.)

Plaintiffs and Defendants responded to that brief on September 15, 2023.  (ECF Nos. 185, 186).

For the following reasons, Arkansas's objections are **OVERRULED** and the Motion for

Preliminary Approval of Consolidated Class Action Settlement is **GRANTED**.

## FACTUAL AND PROCEDURAL HISTORY

This case involves allegations that Defendants Family Dollar Stores of Tennessee, LLC;

Family Dollar Stores of Arkansas, LLC; Family Dollar Stores of Alabama, LLC; Family Dollar

Stores of Louisiana, LLC; Family Dollar Stores of Mississippi, LLC; Family Dollar Stores of

Missouri, LLC; Family Dollar Services, LLC; Family Dollar, Inc.; Family Dollar Stores, Inc.;

Dollar Tree, Inc.; and Dollar Tree Stores, Inc. (collectively "Family Dollar"), deceptively,

negligently, recklessly, and/or intentionally sold products that were contaminated by a rodent

infestation in stores throughout Mississippi, Arkansas, Louisiana, Alabama, Missouri, and

Tennessee.  (ECF No. 54 at PageID 347.)  Plaintiffs Dondrea Brown, Muriel Vanessa Brown,

Vinnie L. Smith, Julian A. Graves, Reginald and Sonya Fields, Taylor Lorimer, Martha "Keisha"

Lacy, Sheena Bibbs, Jerome Whitney, Tina Bishop, Sonya Mull, and Christine Robinson

(collectively "Plaintiffs") brought this case as a class of customers of Family Dollar.  (Id.)

Family Dollar is a value chain store that sells groceries and household goods at

discounted prices.  (ECF No. 54 at PageID 347–48.)  Family Dollar owned and operated more

than 8,000 stores and eleven distribution centers, including a Family Dollar Distribution Center

in West Memphis, Arkansas ("Distribution Center 202"). (ECF No. 167-1 at PageID 3256, 3331.) Distribution Center 202 distributed products to Family Dollar stores in eleven states, six of which had stores that were affected by the incidents that led to this litigation. (Id. at PageID 3256.) Eighty-five of these stores are located in Arkansas. (Id.)

In March 2021, the Arkansas Department of Health ("ADH") inspected Distribution Center 202 and reported seeing "significant rodent activity" in areas where human and pet food were stored. (Id.) The ADH notified the U.S. Food and Drug Administration ("FDA") in October 2021, prompting an FDA investigation. (Id. at PageID 3257.) On February 11, 2022, the FDA released a report that detailed a rodent infestation that compromised products stored inside Distribution Center 202. (ECF No. 54 at PageID 348, 416.) On February 18, 2022, the FDA issued a Safety Alert that directed consumers who had shopped in affected stores to discard certain products that had potentially been contaminated by rodents. (ECF No. 167-1 at PageID 3257.) The same day, Family Dollar temporarily closed 404 stores and issued a voluntary recall of the FDA-regulated products sold in the affected stores. (Id. at PageID 3258.)

After learning of the rodent infestation, the Arkansas Attorney General ("AG") began an investigation into potential violations of Arkansas law, including the ADTPA. (Id. at PageID 3259.) On April 28, 2022, the AG filed a lawsuit against Family Dollar in Arkansas state court ("Arkansas Case") asserting ADTPA claims and several common law claims. (Id.); Arkansas ex rel. Rutledge, Case No. 60CV-22-2725, Pulaski Cty. Cir. Ct. (Apr. 28, 2022). Through its lawsuit, Arkansas seeks actual and punitive damages, disgorgement, restitution, civil penalties, and injunctive relief against Family Dollar. (ECF No. 167-1 at PageID 3259.)

By June 2, 2022, thirteen lawsuits had been filed against Defendants in seven different federal jurisdictions. (Id. at PageID 3260.) That day, the United States Judicial Panel on

Multidistrict Litigation concluded the Western District of Tennessee was an appropriate transferee district for consolidated proceedings, resulting in the instant Multidistrict Litigation ("MDL").  (Id.)  The Arkansas case remained in state court, and thus was not transferred to the MDL.  (Id.)

On August 12, 2022, Plaintiffs filed a Consolidated Complaint in the MDL.  (ECF No. 54.)  The Consolidated Complaint included claims for negligence, negligence per se, negligent failure to warn, breach of implied warranty, unjust enrichment, fraudulent concealment and failure to disclose, as well as violations of multiple Deceptive Trade Practice and Consumer Protection Acts.[2]  (Id.)  Defendants filed a Motion to Dismiss the Consolidated Complaint on September 26, 2022.  (ECF No. 77.)

Plaintiffs filed an Amended Consolidated Complaint on October 17, 2022, containing additional exhibits and allegations.  (ECF No. 83.)  Defendants filed a Motion to Dismiss Plaintiffs' Consolidated Amended Complaint on October 20, 2022.  (ECF No. 89.)  The Court held a hearing on that motion on December 20, 2022.[3]  (ECF No. 116.)

Before the filing of this lawsuit, Plaintiffs conducted "extensive investigation of the facts and circumstances related to the allegations in the Action."  (ECF No. 156-1 at PageID 3063.)  Plaintiffs also undertook significant discovery efforts during the pendency of the case, including serving eighteen interrogatories, fifty-eight requests for admission, forty-six document requests,

---

[2] The list includes Alabama Deceptive Trade Practice Act (Ala. Code § 8-19-1, et seq.); ADTPA (Ark. Code Ann. § 4-88-101, et seq.); Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, et seq.); Mississippi Consumer Protection Act (Miss. Code Ann. § 75-24-1, et seq.); Missouri Merchandising Practices Act (Mo. Rev. Stat § 407.101, et seq.); and Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-101, et seq.).

[3] This motion was still pending when the Court received the Parties' Notice of Settlement.

and disclosing four expert witnesses.  (Id.)  Plaintiffs served numerous third-party subpoenas and

issued Freedom of Information Act ("FOIA") requests which resulted in the production of tens of

thousands of pages of documents.  (Id.)  In late 2022, Plaintiffs and an expert inspected

Distribution Center 202.  (Id.)  Defendants produced for review more than 24,000 pages of

documents and disclosed six experts. (Id.)  Plaintiffs produced more than 6,000 pages of

documents.  (Id.)  Additionally, Defendants took and Plaintiffs defended seven Settlement Class

Representatives depositions.  (Id.)

On November 9, 2022, the Parties engaged in a mediation session, but did not reach an

agreement.  (Id. at PageID 3062.)  On April 18, 2023, the Parties engaged in a second mediation

session.[4]  (ECF No. 173 at PageID 3421.)  The Parties made significant progress at that

mediation, and the mediator prepared a proposal on April 20, 2023, asking the Parties to approve

or reject it by April 28, 2023.  (Id.)  Plaintiffs' counsel requested and received two extensions of

that deadline to discuss the proposed settlement terms with the Arkansas AG.  (Id. at PageID

3421–22.)  On May 3, 2023, the AG was provided a copy of the mediator's proposal, which

included the material terms of the Settlement: an uncapped, "claims made" settlement providing

$25.00 Family Dollar gift cards to all claimants who could attest that they shopped at a Family

Dollar store serviced by Distribution Center 202 between January 1, 2020, and February 18,

2022.  (Id. at PageID 3422.)

On May 5, 2023, the Parties accepted the mediator's proposal and began to prepare a

long-form Settlement Agreement.  (Id.)  On May 8, 2023, the Parties shared a draft agreement

with the AG, and on May 30, 2023, they provided him with an updated draft.  (Id.)

---

[4] Plaintiffs requested a joint mediation with Arkansas, but Family Dollar rejected the
request.  (ECF No. 173 at PageID 3421.)

On June 7, 2023, Arkansas requested that the Parties include a "carve out" from the release to exclude the Arkansas Case from the proposed MDL Settlement. (Id.) A few days later, Arkansas requested that the Parties remove a provision that would reserve Family Dollar's right to object to any attempted double recovery. (Id.) Family Dollar agreed to the carve out but would not delete the reservation of rights against double recovery. (Id.)

On June 19, 2023, Plaintiffs filed the instant Unopposed Motion for Preliminary Approval of Consolidated Class Action Settlement. (ECF No. 155.) The Settlement Agreement that accompanies the Motion includes both the carve out and Family Dollar's reservation of rights, and states, in relevant part:

> WHEREAS, this Settlement expressly excludes and does not release any claims made by the Arkansas Attorney General in *State of Arkansas, ex rel. Leslie Rutledge, Attorney General v. Family Dollar Stores, Inc.; Dollar Tree, Inc.; Family Dollar Services, LLC; and Family Dollar Stores of Arkansas, LLC*, Case No. 60CV-22-2725, Circuit Court of Pulaski County, Arkansas, Civil Division. However, Defendants reserve all rights to raise any and all defenses to the claims raised in that case, including that monetary relief would be inappropriate given the relief provided to consumers through this Settlement.

(ECF No. 156-1 at PageID 3065.)[5]

On July 18, 2023, Arkansas filed a Motion to Intervene (ECF No. 167), which the Court granted on August 30, 2023, following a hearing (ECF No. 182). Arkansas filed its supplemental brief on September 8, 2023, (ECF No. 183), objecting to the proposed settlement, and Plaintiffs and Defendants each filed responses (ECF Nos. 185, 186).

---

[5] On August 18, 2023, the Parties submitted a Supplemental Submission in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 181.) This submission increased the period in which settlement class members may make their claims and revised the definition of the Settlement Class. (Id.)

<u>**ANALYSIS**</u>

**I.  Arkansas's Objections[6]**

Arkansas raises two objections to the proposed Settlement.  First, it asserts that the

ADTPA forbids class settlements.  (ECF No. 183 at PageID 3790–96.)  Second, it contends that

the proposed Settlement has several substantive deficiencies.  (<u>Id.</u> at PageID 3796–804.)  For the

reasons stated below, these objections are **OVERRULED**.

    A.  <u>The ADTPA Does Not Forbid Class Settlements</u>

Both Plaintiffs and Arkansas spill a considerable amount of ink arguing whether the

ADTPA prohibits private class actions.  But Defendants correctly point out that the question

before the court is not whether ADTPA claims can be brought in a private class action, but rather

whether ADTPA claims can be settled and released as part of a private class action settlement.

(ECF No. 186.)

The ADTPA itself is silent on the issue of class settlement.  However, the Sixth Circuit

Court of Appeals has held that certification of a class and approval of a settlement for class-

based claims is appropriate even if state law contains a substantive bar to those same class action

claims.  <u>See</u> <u>Whitlock v. FSL Mgmt., LLC</u>, 843 F.3d 1084 (6th Cir. 2016).  Although Arkansas

points out that the question in that case was whether defendants could decertify a class based on

---

[6] On October 20, 2023, nine states' attorneys general ("Amici States") filed an amicus
brief in support of Arkansas's objection.  (ECF No. 188.)  Although the Court is unaware of any
rule governing the timing of amicus briefs in district court, it is ill-advised to file an amicus brief
forty-two days after the brief being supported is filed.  The Amici States are urged to avoid this
practice in the future.

    In their brief, the Amici States argue that private parties cannot release a state's quasi-
sovereign <u>parens patriae</u> claims for equitable restitution or other relief.  (ECF No. 188 at PageID
3904.)  The Settlement does not do that; indeed, it expressly carves out the claims made by the
Arkansas AG.  (ECF No. 186 at PageID 3901–02.)  Additionally, even absent the carve out,
Arkansas could still pursue its claims for civil penalties and/or injunctive relief.  (<u>Id.</u>)

a post-settlement class action ban, the reasoning is still applicable here.  The Sixth Circuit held:

> "[T]he proposed settlement could not violate the Rules Enabling Act since a 'court's approval of a voluntary settlement, by nature a compromise of rights, does not affect substantive state rights.'"  Sullivan v. DB Investments, Inc., 667 F.3d 273, 312 (3d Cir. 2011) (quoting In re Prudential Ins. Co. Am. Sales Practices Litig., 962 F. Supp. 450, 561 (D.N.J. 1997), aff'd sub nom. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283 (3d Cir. 1998)).  Rather, "a district court's certification of a settlement simply recognizes the parties' deliberate decision to bind themselves according to mutually agreed-upon terms without engaging in any substantive adjudication of the underlying causes of action."  Sullivan, 667 F.3d at 312.  As certification of the settlement class does not amount to "a finding that the plaintiffs are actually entitled to relief under substantive state law," id. at 313, it cannot be the case that certification acts to "abridge, enlarge, or modify any substantive right" created by state law.  28 U.S.C. § 2072(b).  Therefore, certification of the settlement class in this case does not implicate the Rules Enabling Act, even where we assume that the appellants' reading of KRS § 337.385(2) is correct and that it constitutes a substantive provision of the Kentucky statute.

Id. at 1092–93.  Indeed, when asked at the hearing on the Motion to Intervene, the AG even acknowledged that "[t]here is no ban on class action settlements. . . ."  (ECF No. 180 at PageID 3458.)

The court takes no position as to whether ADTPA's class action ban constitutes a substantive provision of the statute.  However, even if it were, approval of the settlement would still be proper.  See Phillips v. Hobby Lobby Stores, Inc., No.: 2:16-cv-00837-JHE, 2021 WL 3710134 (N.D. Ala. Aug. 20, 2021) (granting final settlement approval to a putative class bringing claims under the Alabama Deceptive Trade Practices Act, which prohibits private class actions).  Thus, Arkansas's objection based on the ADTPA is **OVERRULED**.

B. The Proposed Settlement is Not Deficient

Arkansas also argues that the proposed Settlement is not "fair, reasonable, and adequate" because it: 1) limits recovery to one gift card per "household;" 2) requires an unnecessary and

"cumbersome claims process;" 3) "reverts" unclaimed gift card funds to Family Dollar; 4) grants Plaintiffs "smooth sailing" on their requests for attorneys' fees; and 5) runs afoul of three Rule 23(e) factors.  As described below, the Court rejects each of these challenges to the terms of the settlement.

## 1. Limitation of One Gift Card Per Household

Arkansas asserts that the limitation of restitution to one gift card per household rather than one per consumer, as is provided in the ADTPA, will lead to a "significant number of additional claims" and eliminate restitution for "more than half" of the potential claimants.  (ECF No. 183 at PageID 3798–99.)  Essentially, Arkansas finds the Settlement Agreement to be unfair because it may leave "money on the table."  (ECF No. 180 at PageID 3461.)

At the hearing on the Motion to Intervene, the AG stated, "if we were to take this case to trial and we were to win . . . then the defendants would be required to pay restitution to every individual."  (ECF No. 180 at PageID 3462.)  The implied and explicit "if" in that statement cannot obscure the fact that there is no guarantee that Arkansas would be able to obtain relief for <u>any</u> eligible consumer, let alone all of them.

Settlement "is a product of compromise efforts by adversaries.  Usually neither side will attain all its goals in such a settlement."  <u>In re Ford Motor Co. Spark Plug & Three Valve Engine Prods. Liab. Litig.</u>, No. 1:12-MD-2316, 2016 WL 6909078, at *5 (N.D. Ohio Jan. 26, 2016) (quoting <u>Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati</u>, 604 F. Supp. 68, 78 (S.D. Ohio 1984)).  The fact that there is a gap between the maximum possible recovery and the award in this case is the nature of settlement, and does not indicate a lack of fairness, reasonableness, or adequacy.  This argument is without merit.

2. *Claims Process*

Arkansas asserts that the Settlement "requires a cumbersome claims process that requires that consumers provide Defendants with a substantial amount of personally identifying information with no promise as to how that information will be used beyond the mailing of the gift cards." (ECF No. 183 at PageID 3796.)  The claims form does require that the Settlement Class Member: "(a) certify, under penalty of perjury, that from January 1, 2020, through February 18, 2022, inclusive, they personally purchased a product from an Affected Family Dollar Store; (b) provide some confirmation that the Settlement Class Member shopped at one of the Affected Family Dollar Stores; and (c) provide an objective indication that the Settlement Class Member lives in a trade area serviced by an Affected Family Dollar Store." (ECF No. 181-1 at PageID 3584.)

To start, the only personally identifying information requested is the consumer's name, mailing address, and email address.  (ECF No. 186 at PageID 3895.)  This information appears to be the bare minimum necessary to ensure that the consumer is a proper claimant and will receive the gift card.  Moreover, Arkansas does not identify what part of this process is "cumbersome." Finally, the Settlement Agreement expressly states that "any information provided to it by Settlement Class Members will be used solely for the purpose of effecting this Settlement." (ECF No. 181-1 at PageID 3536.)  To imply otherwise is to question the integrity of the lawyers and Parties involved, which the Court is unwilling to do without proof.  Arkansas's position fails to carry the day.

3. *Reversion*

Arkansas contends that the Settlement is unreasonable because "every unused gift card inures to the benefit of the Defendants." (ECF No. 183 at PageID 3796.)  However, the Parties

10

clarify that there is no risk of reversion of unclaimed funds in an uncapped claims-based

settlement.  (ECF No. 185 at PageID 3865; ECF No. 186 at PageID 3896.)  There is no common

fund, rather, gift cards will be issued to eligible consumers who fill out a claims form.  (ECF No.

186 at PageID 3896.)  Further, these gift cards do not expire, so unused portions of the funds will

not revert back to Family Dollar.  (Id.)  Therefore, this argument also is without merit.

### 4. *Attorneys' Fees*

Arkansas argues that an award of $10,500,000 in attorneys' fees is unreasonable.  (ECF

No. 183 at PageID 3797.)  This argument is premature.  Attorneys' fees will be addressed after

the close of the notice and claims period in the Court's consideration of final approval.  This

argument at this juncture does not defeat the Parties' motion.

### 5. *Rule 23(e)(2) Factors*

Arkansas also contends that the proposed Settlement Agreement does not satisfy three of

the Sixth Circuit factors ("UAW Factors") to determine whether a settlement is "fair, reasonable,

and adequate" under Rule 23(e)(2).  (ECF No. 183 at PageID 3799–800); see UAW v. Gen.

Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007).  The factors Arkansas challenges are: 1) the

opinions of class counsel and class representatives, 2) the reaction of absent class members, and

3) the public interest.  (Id.)  The Court addresses Arkansas's arguments regarding these factors in

Section IV.

## II. Conditional Certification

Plaintiffs seek conditional certification of the following class:

All Persons who reside within Arkansas, Alabama, Louisiana, Mississippi,
Missouri, or Tennessee, and from January 1, 2020, through February 18, 2022,
inclusive, purchased any product from an Affected Family Dollar Store.

(ECF No. 181-1 at PageID 3758.)  Rule 23(e)(1)(B)(ii) directs a court to determine, at the

preliminary approval stage, whether it "will likely be able to . . . certify the class for

purposes of judgment on the proposal."  If the court determines that it will likely be able

to certify the class, it conditionally certifies it pending final approval of the settlement.

Newberg on Class Actions § 13:16 (5th ed. 2019).  Rule 23 requires a party seeking class

certification to demonstrate that: (1) the proposed class and class representatives meet all

of the requirements of Rule 23(a); (2) the case fits into one of the categories of Rule

23(b); and (3) class counsel meets the requirements of Rule 23(g).  See generally Fed. R.

Civ. P. 23.  As described below, each of these requirements is met here.

 A. Rule 23(a) Prerequisites for Certification

 Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class."  Fed. R.

Civ. P. 23(a)(1)–(4).  Each consideration is addressed below.

  *1. Rule 23(a)(1) — Numerosity*

 To begin, a Class must be "so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a)(1).  "While no strict numerical test exists, 'substantial' numbers of affected

consumers are sufficient to satisfy this requirement."  Young v. Nationwide Mut. Ins. Co., 693

F.3d 532, 541 (6th Cir. 2012) (citations omitted).  "The numerosity requirement is also satisfied

more easily upon a showing that there is wide geographical diversity of class members, which

makes joinder of all the class members more impracticable."  In re Inter-Op Hip Prosthesis Liab.

Litig., 204 F.R.D. 330, 339 (N.D. Ohio 2001) (quotation marks and citation omitted).

 Plaintiffs submit that the proposed Class contains more than "one million individuals

strewn across six states and multiple jurisdictions." (ECF No. 156 at PageID 3042.) The

proposed Class is indisputably so numerous that joinder is impracticable. See Young, 693 F.3d

at 541.

### 2. Rule 23(a)(2) — Common Questions of Law and Fact

Each Class must have at least one common question of law or fact, and resolution of

those questions must advance the litigation. Fed. R. Civ. P. 23(a)(2); Alkire v. Irving, 330 F.3d

802, 821 (6th Cir. 2003) (citing Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir.

1998)). "Even a single common question will do." Wal-Mart Stores, Inc. v. Dukes, 564 U.S.

338, 359 (2011) (cleaned up). "The threshold for commonality is not high." Bradberry v. John

Hancock Mut. Life Ins. Co., 217 F.R.D. 408, 413 (W.D. Tenn. 2003) (quotation marks and

citation omitted).

Commonality here is straightforward. Plaintiffs share factual and legal issues, including

that rodents were present in Distribution Center 202, which allegedly resulted in Family Dollar

selling potentially contaminated products in multiple Family Dollar stores. (ECF No. 156 at

PageID 3043.)

### 3. Rule 23(a)(3) — Typicality

The class representatives' claims must be typical of the claims of the members of the

class. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists

between the injury to the named plaintiff and the conduct affecting the class, so that the court

may properly attribute a collective nature to the challenged conduct." In re Am. Med. Sys., Inc.,

75 F.3d 1069, 1082 (6th Cir. 1996) (quotation marks and citation omitted). "[A] plaintiff's claim

is typical if it arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory." Id.

(quotation marks and citation omitted).

The proposed Class satisfies the typicality requirement. The claims of the Class members are based on the same challenged conduct and the same deceptive trade practice theories, and the Class Representatives seek the same damages as the absent Class members. (ECF No. 156 at PageID 3043.)

### 4. Rule 23(a)(4) — Adequacy of Representation

The class representatives must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). The Rule 23(a)(4) inquiry serves to uncover conflicts of interest between named parties and the classes they seek to represent. "'A class representative must be part of the class and possess the same interest and suffer the same injury as class members.'" Beattie v. CenturyTel, Inc., 511 F.3d 554, 562 (6th Cir. 2007) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997)). Class members must not have "interests that are [] antagonistic to one another." Id. at 563 (quotation marks and citation omitted). In addition, Courts "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." Young, 693 F.3d at 543 (quotation marks and citation omitted).

First, "[t]o forestall class certification, the intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." See In re Polyurethane Foam Antitrust Litig., 314 F.R.D. 226, 238–41 (N.D. Ohio 2014). Here, the Court is not aware of any such conflicts.

Second, the proposed Class Representatives have incurred the same alleged injury that is the basis of this litigation. Furthermore, the Representatives have fulfilled their duties throughout the litigation, including engaging in discovery and sitting for depositions. (ECF No.

156 at PageID 3044.)  Settlement Class Counsel were appointed by the Court to represent the

plaintiff class in the MDL.  (ECF No. 156 at PageID 3043.)  Counsel has demonstrated their

experience and capability in prosecuting complex class actions and managing the resultant

Settlement; they have dedicated hundreds of thousands of dollars of their time and resources

litigating on behalf of the proposed Settlement Class.  (Id. at PageID 3044.)  Proposed Settlement

Class Counsel and the Class Representatives are undoubtedly adequate.

     B.  Rule 23(b) Class Action Categorization

A class that satisfies Rule 23(a)'s requirements must also fall within one of three

categories found in Rule 23(b).  Plaintiffs' proposed Settlement Class is characterized as a Rule

23(b)(3) class, which requires that:

> the court find[] that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Again, each consideration is addressed below.

     *1.  Predominance*

"'The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation.'"  Beattie, 511 F.3d at 564 (quoting Amchem

Prods., 521 U.S. at 632).  To satisfy the predominance requirement in Rule 23(b)(3), "a plaintiff

must establish that the issues in the class action that are subject to generalized proof, and thus

applicable to the class as a whole, . . . predominate over those issues that are subject only to

individualized proof."  Id. (quotation marks and citation omitted).  "[C]ommon issues may

predominate when liability can be determined on a class-wide basis, even when there are some

individualized damage issues."  Id. (quotation marks and citation omitted).

Here, the Class's common issues predominate over individual issues. The litigation is focused on common issues of fact, namely whether there were rodents present in Distribution Center 202, whether the products in the Distribution Center 202 were contaminated, and whether Defendants offered products to their consumers that had been compromised by rodents. (ECF No. 156 at PageID 3045.) Each individual consumer who opted to purchase products sold by Family Dollar during the relevant time period from an affected Family Dollar store was similarly tied to these common issues of fact. Because members of the Settlement Class's claims all focus on the same operative set of facts and legal theories, predominance is met.

2. *Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. Rule 23(b)(3) includes a non-exhaustive list of factors to consider in making that determination, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. See Fed. R. Civ. P. 23(b)(3). "The Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'" in the creation of the Rule 23(b)(3) class. Amchem Prods., 521 U.S. at 617.

The Court agrees with Plaintiffs that a class action here is superior to other available methods for adjudicating this controversy. This case involves multiple state legal frameworks and jurisdictions, and a complex web of Defendants' intermingled business entities; moreover, the remedy achievable by an individual plaintiff is wildly disproportionate to the costs of

16

litigating to that end. (ECF No. 156 at PageID 3046.) The interests of members of the proposed

Settlement Class's individually controlling the prosecution of separate claims are outweighed by

the efficiency of the class mechanism. In re Cardizem CD Antitrust Litig., 200 F.R.D. 297, 325

(E.D. Mich. 2001) (finding that class action is superior because it ensures fair and efficient

adjudication).

### III. Appointment of Class Counsel and Class Representatives

#### A. Class Counsel

Plaintiffs seek appointment of J. Gerard Stranch, IV, Sarah Sterling Aldridge, and

Charles J. LaDuca as Settlement Class Counsel pursuant to Rules 23(c)(1)(B) and 23(g). (ECF

No. 155 at PageID 3025.)

The Court may appoint class counsel if it determines the attorneys are adequate under

Rule 23(g)(1) and (4). Fed. R. Civ. P. 23(g)(2). In appointing class counsel, the Court must

consider:

> (i)    the work counsel has done in identifying or investigating potential claims
>        in the action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and
>        the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). The Court may consider any other matter pertinent to counsel's

ability to represent the interests of the class fairly and adequately. Fed. R. Civ. P. 23(g)(1)(B).

Prior to the filing of this matter, Plaintiffs' Counsel conducted "extensive investigation of

the facts and circumstances related to the allegations in the Action," including hiring and

consulting with experts, interviewing potential witnesses, reviewing documents produced by

17

third parties and received through FOIA requests.  (ECF No. 156-1 at PageID 3063.)  They also

undertook significant discovery efforts during the pendency of the case, including serving

eighteen interrogatories, fifty-eight requests for admission, forty-six document requests, and

disclosing four expert witnesses.  (ECF No. 156 at PageID 3031.)  The proposed Counsel belong

to established plaintiff-side class action firms; their experience in handling class actions is

beyond dispute.  They have demonstrated sufficient knowledge of the applicable law throughout

the case and have successfully navigated this case to the settlement stage.  Proposed Counsel has

already invested hundreds of thousands of dollars' worth of their time and resources in litigating

the case, and the Court expects that they will continue to do so.  (ECF No. 156 at PageID 3044.)

The Court finds that proposed Class Counsel has satisfied the requirements of Rule 23(g),

and accordingly appoints them as Class Counsel.

B.  Class Representatives

As part of the Settlement Agreement signed on June 16, 2023, the Parties agreed that,

concurrently with the filing of this Settlement Agreement, Class Counsel will seek
to dismiss named plaintiffs Dondrea Brown, Muriel Vanessa Brown, Reginald
Fields, Sonya Fields, and Christine Robinson, and substitute Beverly Gordon and
Sandra Walker to serve as Settlement Class Representatives. With these
substitutions, there will be Settlement Class Representatives from each state with
an Affected Family Dollar Store.

(ECF No. 162 at PageID 3212.)  In keeping with that commitment, on June 28, 2023, Plaintiffs

filed an Unopposed Motion to Substitute and Dismiss Certain Class Representatives.  (Id.)

The motion seeks to dismiss Reginald Fields, Sonya Fields, Dondrea Brown, Muriel

Vanessa Brown, and Christine Robinson without prejudice and with the right to participate in the

Settlement as absent class members if the Court approves the Parties' Settlement Agreement, and

to substitute Beverly Gordon and Sandra Walker as Settlement Class Representatives.  (Id.)

Finding good cause, the motion is **GRANTED**.

As stated above, the proposed Class Representatives "fairly and adequately protect the interests of the class." (See supra II.A.4.) Further, they have fulfilled their duties throughout the litigation, including participating in discovery and sitting for depositions. (ECF No. 156-2 at PageID 3178.) The Court finds the Proposed Class Representatives are appropriate, and thus **APPOINTS** them.

## IV. Preliminary Settlement Approval

The Parties seek preliminary approval of the Settlement Agreement under Rule 23. See Fed. R. Civ. P. 23(e) ("[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval"). Rule 23(e)(1)(B)(i) requires a Court to determine at the preliminary approval stage whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Under Rule 23(e)(2), a court must review whether the proposed settlement is "fair, reasonable, and adequate after considering" the following four factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D); <u>Busby v. Bonner</u>, No. 2:20-cv-2359-SHL-atc, 2021 WL 4127775, at *2–3 (W.D. Tenn. Jan. 28, 2021) (articulating the framework for preliminary settlement approval).

The Sixth Circuit also considers seven factors to determine whether a class action settlement is "fair, reasonable, and adequate," many of which overlap with the Rule 23(e) factors. <u>UAW</u>, 497 F.3d at 631. These factors are:

1. the risk of fraud or collusion;

2. the complexity, expense, and likely duration of the litigation;

3. the amount of discovery engaged in by the parties;

4. the likelihood of success on the merits;

5. the opinions of class counsel and class representatives;

6. the reaction of absent class members; and

7. the public interest.

(<u>Id.</u>) All of these factors are considered below, grouped together where appropriate.

    A. <u>Rule 23(e) Factors</u>

       *1. Adequate Representation and Arm's Length Negotiation*

The first two Rule 23(e)(2) factors support preliminary approval. As stated above, Class Counsel has adequately represented the Class. (<u>See</u> <u>supra</u> II.A.4.) The Settlement Agreement is the result of lengthy and hard-fought litigation spanning more than a year and two mediation sessions. (ECF No. 156 at PageID 3039.) With extensive fact discovery and multiple depositions complete, proposed Settlement Class Counsel were well-informed about the facts and strengths of the claims asserted when the second mediation began. (<u>Id.</u>)

The Court also finds that the Settlement Agreement was negotiated at arm's length. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). The Court is aware of no evidence in the record to rebut this presumption. Because the Settlement "arose out of arms-length, non-collusive negotiations[,]" the Settlement Agreement is the product of a procedurally fair process. Wm. B. Rubinstein, Newberg and Rubenstein on Class Actions § 13.14 (6th ed. 2022).

### 2. Adequate Relief

Rule 23(e)(2)(C) requires a court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

The monetary recovery—a $25 Family Dollar Gift Card for each eligible Settlement Class Member who submits an approved claim—constitutes a significant portion of the maximum potential damages. (ECF No. 156 at PageID 3040.) Family Dollar also worked closely with the FDA to implement extensive remedial actions to help prevent issues like those alleged to have occurred at Distribution Center 202 from occurring again. (Id.) These corrective actions include, for example: the retention of a number of third-party consultants with expertise in food safety and regulatory compliance; the implementation of more than sixty Standard Operating Procedures addressing topics including, among others, integrated pest management, sanitation, employee training, food safety, and preventative maintenance; the creation of a large

food safety department; and the significant enhancement of compliance systems and processes throughout the organization.  (Id.)

The Settlement also allows class members to avoid the significant risks and uncertainties inherent in trials and appeals.  "[I]t is unnecessary to scrutinize the merits of the parties' positions, but it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial."  Fitzgerald, 2020 WL 7764969, at *12 (quotation marks and citation omitted).  Defendants would likely have asserted various arguments and defenses at class certification, summary judgment and/or trial.  A jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, particularly regarding causation and damages, making the outcome of such a trial uncertain for both Parties. See, e.g., In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 523 (E.D. Mich. 2003) ("[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict").  The Court cannot readily determine what the outcome of this case would be if it were fully litigated.  The uncertainty as to the outcome weighs in favor of approving this Settlement.

### 3. Equitable Treatment

Rule 23(e)(2)(D) requires a court to determine whether the "proposal treats class members equitably relative to each other."  For this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2) advisory committee notes to 2018 amendment.

The proposed allocation appears to be fair and equitable. All members of the Settlement Class, including the Class representatives, will be treated fairly and in a similar manner, each recovering the same fully transferable, non-expirable Family Dollar Gift Card. (ECF No. 156 at PageID 3041.)

B. UAW Factors

Several of the UAW Factors are discussed in connection with the Rule 23(e)(2) factors, including the risk of fraud or collusion, the amount of discovery engaged in by the Parties, and the likelihood of success on the merits. The remaining four factors—the complexity, expense, and likely duration of litigation, the opinions of class counsel and class representatives, the reaction of absent class members, and the public interest are addressed below.

1. *The Complexity, Expense, and Likely Duration of the Litigation*

This case involves multiple state legal frameworks and jurisdictions, and a complex web of Defendants' intermingled business entities. (ECF No. 156 at PageID 3046.) Plaintiffs' counsel have expended hundreds of thousands of dollars in time and resources litigating this case. (Id. at PageID 3044.) This Settlement Agreement comes after more than a year of intense investigation and litigation. (Id. at PageID 3029.) Absent settlement, it would likely have continued for a considerable time. The complexity, cost, and likely duration of the case support approval.

2. *The Opinions of Class Counsel and Class Representatives*

Class Counsel asserts that the Settlement has no deficiencies and treats all class members equitably. (ECF No. 156 at PageID 3038.) Further, all of the class representatives signed the Settlement Agreement. (ECF No. 156-1 at PageID 3090–98.) However, Arkansas asserts that the true opinions of the Class Representatives regarding the fairness of the Settlement "is

23

doubtless colored by the fact that they are themselves receiving two hundred (200) times the amount of compensation to other class members. . ." in the form of a service award. (ECF No. 183 at PageID 3800.)

The Settlement is not contingent on the amount of any proposed service awards. (ECF No. 186 at PageID 3899.) Any service award must be approved by the Court and will hinge on factors such as proof of time spent on the case, which are not yet before the Court. Thus, Arkansas's objection is not well-taken and this factor weighs in favor of approval.

### 3. The Reaction of Absent Class Members

Arkansas correctly notes that "the reaction of absent class members remains to be revealed." (ECF No. 183 at PageID 3801.) However, Arkansas expresses concern that because the total amount of the settlement fund has not been disclosed, it will be impossible for the absent class members, other States, and other courts to evaluate the fundamental fairness of the proposed Settlement Agreement. (Id.)

The assessment of this factor is premature since the reaction of the absent class members in currently unknown. The class action approval process includes notice to the class members and an opportunity for them to object at the final approval hearing. Arkansas's argument on this issue is not a basis to withhold preliminary approval.

### 4. Public Interest

The Parties contend that the Settlement serves the public interest because it provides substantial relief to Settlement Class Members and avoids the risks and costs of litigation. (ECF No. 156-1 at PageID 3170.) Arkansas asserts that this factor weighs against approval because the proposed Settlement Agreement excludes—based on the state's estimation—one half of Family Dollar's Arkansas consumers. (ECF No. 183 at PageID 3082.)

The Settlement Agreement explicitly carves out the Arkansas claims, leaving Arkansas free to continue to litigate its case in Arkansas state court.  (ECF No. 185.)  Although Arkansas asserts that the carve out is not a binding settlement term because it is included in the Recitals (ECF No. 183 at PageID 3803), the Settlement Agreement explicitly incorporates the Recitals as a material part of the agreement.  (ECF No. 181-1 at PageID 3543.)  Additionally, even absent the carve out, Arkansas would not be precluded from pursuing its claims for civil penalties and/or injunctive relief.  (ECF No. 186 at PageID 3901–02.)  Finally, only consumers who do not opt out will be bound by the release.  (ECF No. 186 at PageID 3902.)  Thus, Arkansas's concern appears unfounded.

"There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'"  Does 1–2 v. Déjà vu Servs., Inc., 925 F.3d 886, 899 (6th Cir. 2019) (citation omitted).  This litigation fits squarely into that description—complex and unpredictable.  Thus, this factor supports approval, and Arkansas's objection is to no avail.

## V.    Adequacy of Notice

When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  See Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (stating that "all that the notice must do is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their

interests") (internal quotation marks and citations omitted). The notice may be by one or more

of the following methods: United States mail, electronic means, or other appropriate means. Fed.

R. Civ. P. 23(c)(2)(B).

Plaintiffs propose multiple forms of notice: direct email notice, digital advertising,

publication in People magazine circulated in Alabama, Arkansas, Louisiana, Mississippi,

Missouri, and Tennessee, and paid Google advertising. (ECF No. 156 at PageID 3047.) The

Notice Plan includes the creation of a case-specific Settlement Website to provide Class

Members with:

(1) generalized information about the Settlement, its scope, and its remedies, with
a clickable table of contents; answers to frequently asked questions; a contact
information page that includes the address for the Settlement Administrator
and addresses and telephone numbers for Class Counsel;

(2) deadlines for opting out of or objecting to the Settlement, and the dates of
relevant Court proceedings, including the Final Approval Hearing;

(3) a downloadable and online version of the form by which Settlement Class
Members may exclude themselves from the Settlement Class;

(4) information on making a claim and a downloadable and online version of the
Claim Form; and

(5) relevant legal documents like this Settlement, the Amended Consolidated
Class Action Complaint, the signed order of Preliminary Approval, notices,
and (when it becomes available) Plaintiffs' application for an Attorneys' Fees
and Expenses Award and/or an application for Service Awards.

(ECF No. 181-1 at PageID 3580–81.) There will also be a toll-free telephone line to inform

members the Settlement Class about their rights and options. (Id. at PageID 3581.)

The Notice Plan adequately apprises all potential class members of the terms of the

Settlement Agreement, provides the opportunity to make informed decisions, and comports with

due process.

## VI.  Appointment of Claims Administrator and Escrow

Plaintiffs seek the appointment of Angeion to oversee the administration of the Settlement, including disseminating notice to the Settlement Class, approving submitted Claims, and distributing the Family Dollar gift cards to qualifying Class Members.  (ECF No. 156 at PageID 3048.)  They assert that Angeion is an experienced settlement and claims administration firm with sophisticated technological capabilities, staffed by personnel who are well-versed in consumer protection issues and class action litigation.  (Id.)  Plaintiffs also submit what appears to be Angeion's marketing materials, which reflect its involvement as a claims administrator in dozens of similar cases.  (ECF No. 181-1 at PageID 3587–608.)  The Court is not aware of any test for assessing the propriety of a claims administrator appointment.  Given Angieon's demonstrated experience, the Court **GRANTS** the motion to appoint it.

## <u>CONCLUSION</u>

For the reasons described above, Plaintiffs' Unopposed Motion is **GRANTED**.  The Court **ORDERS** that:

1. The Court finds that it has jurisdiction over the subject matter of this Action, all Parties to the Action, and the Settlement Class.

2. Plaintiffs' Unopposed Motion to Substitute and Dismiss Certain Class Representatives is **GRANTED**.

3. The Settlement is conditionally **APPROVED** as fair, reasonable, and adequate, subject to further consideration at the Final Settlement Fairness Hearing.

4. Named Plaintiffs Sheena Bibbs, Tina Bishop, Beverly Gordon, Julian Graves, Martha Lacy, Taylor Lorimer, Soyna Mull, Vinnie Smith, Sandra Walker, and Jerome Whitney are conditionally **APPROVED** as Class Representatives.

5. J. Gerard Stranch, IV, Sarah Sterling Aldridge, and Charles J. LaDuca are **APPROVED** as Class Counsel, and the Court finds that Class Counsel has and will fairly and adequately protect the interests of the Class.

6. Pursuant to Rule 23, the Court conditionally **CERTIFIES** the following Class for purposes of this Settlement only, and subject to further consideration at the Final Settlement Fairness Hearing:

   a.  All persons who reside within Arkansas, Alabama, Louisiana, Mississippi, Missouri, or Tennessee, and, from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store.

   b.  Excluded from the Settlement Class are (i) Defendants; (ii) Defendants' agents, parents, officers, predecessors, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants; (iii) Class Counsel and any other attorneys who represent Settlement Class Representatives or the Settlement Class in this Action, as well as their agents and employees; (iv) the judicial officers and court staff assigned to this case, as well as their immediate family members; and (v) Persons who timely request to be excluded from this Settlement as provided in Paragraph 9.

7. If the Settlement Agreement does not receive the Court's final approval, if final approval is reversed on appeal, or if the Settlement Agreement is terminated or otherwise fails to become effective, the Court's grant of conditional class certification of the Settlement Class shall be vacated, the Parties shall revert to their positions in the Action as they existed on April 18, 2023, and the Settlement Class Representatives and the Settlement Class Members will once again bear the burden to prove the propriety of class certification and the merits of their claims at trial.

8. The Notice Plan submitted with the Motion for Preliminary Approval and the forms of notice attached satisfy the requirements of Federal Rule of Civil Procedure 23 and are **APPROVED**.  Non-material modifications to the notices and claim form may be made by the Settlement Administrator without further order of the Court, so long as they are approved by the Parties and consistent in all material respects with the Settlement Agreement and this Order.  The Settlement Administrator is **DIRECTED** to carry out the Notice Plan in conformance with the Settlement Agreement and the below-stated schedule, and to perform all other tasks that the Settlement Agreement requires.  Prior to the Final Approval Hearing, Class Counsel shall cause to be filed with the Court an appropriate declaration by the Settlement Administrator with respect to complying with the provisions of the Notice Plan.

9. The Court **FINDS** and **ORDERS** that the Notice fully satisfy the requirements of due process, provide the best notice practicable under the circumstances to the members of the Class, and provide individual notice to all members of the Class who can be identified through reasonable effort.

10. Angeion is **APPOINTED** as Settlement Administrator.  Angeion shall act in compliance with the Protective Order (ECF No. 58), including but not limited to making all necessary efforts and precautions to ensure the security and privacy of

Settlement Class Member information and protect it from loss, misuse, unauthorized access and disclosure, and to protect against any reasonably anticipated threats or hazards to the security of Settlement Class Member information; not using the information provided by Defendants or Class Counsel in connection with the Settlement or this Notice Plan for any purposes other than providing notice or conducting claims administration; and not sharing Settlement Class Member information with any third parties without advance consent from the Parties. The Court **ORDERS** Angeion to commence the Notice Plan to potential Settlement Class Members within **fifteen days** after entry of this Preliminary Approval Order ("Notice Date").  At least **thirty-five days** prior to the Final Approval Hearing, Angeion shall provide a declaration that notice has been effectuated according to the terms described herein.

11. Settlement Class Members will have **sixty calendar days** from the Notice Date to submit their Claim Forms ("Claims Submission Deadline"), which is adequate and sufficient time. Settlement Class Members who submit a valid Claim Form within sixty days of the Notice Date may qualify to receive a Family Dollar Gift Card, if the Claim Form is deemed to be an Approved Claim by the Settlement Administrator.

12. Any person falling within the definition of the Settlement Class may, upon request, be excluded or "opt out" from the Settlement Class.  Any such Person who desires to opt out must submit written notice of such intent online through the claims portal or via United States mail to the designated addresses established by the Settlement Administrator **sixty calendar days** from the Notice Date ("Opt-Out Deadline").  The written notice must (i) identify the case name of the Action; (ii) identify the name current mailing address, email address, and phone number of the Person seeking exclusion from the Settlement; (iii) be personally signed by the Person seeking exclusion; (iv) include a statement clearly indicating the Person's intent to be excluded from the Settlement; (v) request exclusion only for that one Person whose personal signature appears on the request; (vi) state that the Person seeking exclusion personally purchased a product from an Affected Family Dollar Store during the Class Period; and (vii) list the Affected Family Dollar Store(s) from which the Person seeking exclusion purchased a product during the Class Period.  Opt-out requests seeking exclusion on behalf of more than one individual shall be deemed invalid by the Settlement Administrator.  To be effective, the written notice shall be postmarked no later than the Opt-Out Deadline or submitted online through the claims portal and verified no later than the Opt-Out Deadline in accordance with the Settlement Agreement. All those Persons submitting valid and timely notices of opt out shall not be entitled to receive any benefits of the Settlement.  Any Settlement Class Member who does not timely and validly exclude themselves from the Settlement shall be bound by the terms of the Settlement.  If final judgment is entered, any Settlement Class Member who has not submitted a timely, valid written notice of opt out from the Settlement Class shall be bound by all subsequent proceedings, orders, and judgments in this matter, including but not limited to the Releases set forth in the Settlement Agreement and incorporated in the judgment.

13. Any Settlement Class Member may enter an appearance for the purpose of objecting to the Settlement, at their own expense, individually or through counsel of their own choice.  If a Settlement Class Member does not enter an appearance, they will be represented by Class Counsel.  Any Settlement Class Member who wishes to object to the Settlement, the benefits of the Settlement, Service Awards, and/or the Attorneys' Fees and Expenses Award, or to appear at the Final Approval Hearing and show cause, if any, why the Settlement should not be approved as fair, reasonable, and adequate to the Settlement Class, why a Final Approval Order and Judgment should not be entered thereon, why the benefits of the Settlement should not be approved, or why the Service Awards and/or the Attorneys' Fees and Expenses Award should not be granted, may do so provided they have not timely and validly excluded themselves from the Settlement, but must proceed as set forth in this paragraph.  No Settlement Class Member will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Settlement Class Member wishes the Court to consider, within **sixty calendar days** following the Notice Date ("Objection Deadline"). Any objection must include: (i) the case name and number of the Action; (ii) the full name, mailing address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of their counsel; (iii) a statement that the objector personally purchased a product from an Affected Family Dollar Store during the Class Period and that none of the exclusions listed in the definition of the Settlement Class applies to the objector; (iv) a list of the Affected Family Dollar Store(s) from which the objector purchased a product during the Class Period; (v) any supporting papers, materials, or briefs the objector wishes the Court to consider when reviewing the objection; (vi) a statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (vii) a statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the five years preceding the date that the objector files the objection, along with the caption of each case in which the objector has made such objection; (viii) a statement of the specific grounds for the objection, including any legal and factual support and any evidence in support of the objection; (ix) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel; and (x) the objector's signature. In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Final Approval Hearing (whether <u>pro se</u> or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.  Lawyers asserting objections on behalf of Settlement Class Members must: (1) file a notice of appearance with the Court by **fourteen days** before Final Approval Hearing; (2) file a sworn declaration attesting to their representation of each Settlement Class Member on whose behalf the objection is being filed, or file (in camera) a copy of the contract between that lawyer and each such Settlement Class

Member; and (3) comply with all of the requirements and procedures described in this paragraph. Lawyers asserting objections on behalf of Settlement Class Members also must file a sworn declaration that specifies the number of times during the prior five-year period they have objected to a class action settlement on their own behalf or on behalf of a member of a class. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Settlement Agreement and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or any other means. Responses to objections are due **ninety days** after the Notice Date.

14. Settlement Class Representatives and Class Counsel shall file their motion seeking approval of the Settlement and final judgment in the Action by no later than **ninety days** after the Notice Date. All briefing and supporting documents in support of a Motion for Attorneys' Fees and Expenses and Service Awards must be filed **seven days** prior to the Objection Deadline.

15. Class Counsel and Defense Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the notices and other exhibits that they jointly agree are reasonable or necessary to further the purpose of effectuating the Settlement Agreement.

16. The Final Settlement Fairness Hearing shall be held by the Court on **Friday, April 5, 2024, at 10:00 a.m.**, which is not less than thirty-five days after the exclusion and objection deadlines, in Courtroom 1, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, TN 38103, to consider:

    a. whether the Settlement should be approved as fair, reasonable, and adequate to the Settlement Class;

    b. whether a Final Approval Order and Final Judgment should be entered;

    c. whether the Settlement benefits as proposed in the Settlement Agreement should be approved as fair, reasonable, and adequate;

    d. whether to approve the application for Service Awards for certain Settlement Class Representatives and an Attorneys' Fees and Expenses Award; and

    e. any other matters that may properly be brought before the Court in connection with the Settlement. The Court may approve the Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to

the Settlement Class, provided such modifications do not materially limit the rights of Settlement Class Members under the Settlement Agreement.

17. Upon application of the Parties and good cause shown, the deadlines set forth in this Order may be extended by order of the Court, without further notice to the Settlement Class. Settlement Class Members must check the Settlement Website (www.FDWarehouseSettlement.com) regularly for updates and further details regarding extensions of these deadlines. The Court reserves the right to adjourn or continue the Final Approval Hearing, and/or to extend the deadlines set forth in this Order, without further notice of any kind to the Settlement Class.

18. This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of which shall be restored to their respective positions existing as of April 18, 2023, if the Effective Date does not occur or the Settlement is otherwise terminated in accordance with the terms of the Settlement Agreement. In such an event, the Settlement shall become null and void and shall be of no further force and effect, and neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose whatsoever. For the avoidance of doubt, if the Effective Date does not occur or the Settlement is otherwise terminated in accordance with the terms of the Settlement, then neither the Settlement (including any Settlement-related filings) nor the Court's orders, including this Order, relating to the Settlement shall be: (1) construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing, breach, liability or the certifiability of any class; (2) construed or used as an admission, concession, or declaration by or against the Settlement Class Representatives or any other Settlement Class Member that their claim lacks merit or that the relief requested is inappropriate, improper, or unavailable; or (3) construed or used as a waiver by any Party of any defense or claim he, she, or it may have in this litigation or in any other lawsuit.

19. All further proceedings in this Action are **ORDERED** stayed until entry of the Final Approval Order or termination of the Settlement Agreement, whichever occurs earlier, except for those matters necessary to obtain and/or effectuate final approval of the Settlement Agreement.

**IT IS SO ORDERED,** this 27th day of October, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE