# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| *In re Family Dollar Stores, Inc., Pest Infestation Litigation* | MDL No. 3032 |
| **This Document Relates To:** | Case No. 2:22-md-03032-SHL-TMP |
| **ALL CASES** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL AND SUPPLEMENT TO PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   BACKGROUND .................................................................................... 4

      A.   Procedural Background........................................................................ 4

      B.   Plaintiffs Engaged in Extensive Discovery........................................ 8

      C.   The Parties Negotiated the Settlement.............................................. 10

      D.   Terms of the Settlement Agreement. ................................................ 10

           1.   Class Definition. ..................................................................... 10

           2.   Benefits to Class Members. .................................................... 11

           3.   Fees, Costs, and Service Awards. ........................................... 12

      E.   The Settlement Was Well Received. ................................................. 13

      F.   Efforts Were Made to Maximize Notice............................................ 13

III.  THE PROVISIONALLY-CERTIFIED SETTLEMENT CLASS SHOULD BE
      FINALLY CERTIFIED AND THE CLASS REPRESENTATIVES FINALLY
      APPOINTED ........................................................................................ 15

IV.   THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR FINAL
      APPROVAL UNDER RULE 23(E) AND SIXTH CIRCUIT LAW.............................. 16

      A.   The Settlement Satisfies Each of the Rule 23(e) Factors....................... 16

           1.   The Class Received More than Adequate Representation........................ 16

           2.   The Settlement Was the Product of Arm's Length Negotiation. ............. 17

           3.   The Settlement Provides Excellent Benefits to the Class. ....................... 18

           4.   The Settlement Treats Class Members Equitably..................................... 19

      B.   Evaluation of the *UAW* Factors Similarly Supports Final Settlement Approval.. 19

           1.   The Settlement Was Not the Product of Fraud or Collusion. ................... 19

           2.   The Complexity, Expense, and Likely Duration of the Litigation Counsel
                in Favor of Final Approval. ....................................................................... 20

3.      The Parties Engaged in Substantial Discovery, Counselling in Favor of
        Final Approval. ...................................................................................... 21

4.      The Likelihood of Success on the Merits Was Not Certain, Counselling in
        Favor of Final Approval. ......................................................................... 22

5.      Class Counsel and the Class Representatives All Support the Settlement.
        .................................................................................................................. 22

6.      The Reaction of Absent Class Members Dictates in Favor of Final
        Approval. .................................................................................................. 22

7.      Final Approval of the Settlement Would Be Consistent with the Public's
        Interest in Encouraging Private Litigants to Combat Anticompetitive
        Conduct. ................................................................................................... 23

V.    NOTICE WAS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS ........ 24

VI.   NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT ........... 26

VII.  CONCLUSION ........................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Does 1–2 v. Déjà vu Servs., Inc.*,
    925 F.3d 886 (6th Cir. 2019) ................................................................ 23

*Ganci v. MBF Insp. Servs.*,
    No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645 (S.D. Ohio Dec. 3, 2019) ........................ 20

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) ........................................................ 23

*In re Big Lots, Inc. S'holder Litig.*,
    No. 2:12-cv-445, 2018 U.S. Dist. LEXIS 244649 (S.D. Ohio Aug. 28, 2018) ........................ 20

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ 23

*In re Nationwide Fin. Servs. Litig.*,
    No. 2:08-cv-249, 2009 U.S. Dist. LEXIS 126962 (S.D. Ohio Aug. 18, 2009) ........................ 20

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235 (E.D. Mich. Sep. 2, 2010) ..................... 19

*In re Se. Milk Antitrust Litig.*,
    No. 2:08-MD-1000, 2012 U.S. Dist. LEXIS 83703 (E.D. Tenn. June 15, 2012) .............. 20, 22

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ........................................................ 16, 19

*Karpik v. Huntington Bancshares Inc.*,
    No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *16 (S.D. Ohio Feb. 18, 2021) ........ 18, 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................ 24

*Office & Prof'l Emps. Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement
    Workers of Am.*,
    311 F.R.D. 447 (E.D. Mich. 2015) ........................................................ 23

**Statutes**

28 U.S.C. § 1715 ........................................................ 26

**Other Authorities**

4 Alba Conte & Herbert B. Newberg,
    Newberg on Class Actions § 11.50 (4th ed. 2002) ........................................ 18

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 16, 18, 24

Plaintiffs Sheena Bibbs, Tina Bishop, Beverly Gordon, Julian Graves, Martha Lacy, Taylor Lorimer, Sonya Mull, Vinnie Smith, Sanda Walker, and Jerome Whitney, also referred to as "Class Representatives," by and through Class Counsel,[1] hereby move for final approval of the proposed settlement ("Settlement") with Defendants Family Dollar Stores of Tennessee, LLC; Family Dollar Stores of Arkansas, LLC; Family Dollar Stores of Alabama, LLC; Family Dollar Stores of Louisiana, LLC; Family Dollar Stores of Mississippi, LLC; Family Dollar Stores of Missouri, LLC; Family Dollar Services, LLC; Family Dollar, LLC (formerly Family Dollar, Inc.); and Family Dollar Stores, LLC (formerly Family Dollar Stores, Inc.) (collectively, "Defendants" or "Family Dollar").[2]

## I.    **<u>INTRODUCTION</u>**

This litigation involves consumer protection claims alleging that Family Dollar's West Memphis Distribution Center ("Distribution Center") lacked proper pest control and exhibited unsanitary conditions which led to the presence of rodents, potentially impacting Products it sought to distribute and offer for sale at approximately 400 stores. In early 2022, the United States Food and Drug Administration (FDA) issued a 22-page inspection report concerning conditions at the Distribution Center.

On April 18, 2023, after much hard-fought litigation, Class Counsel and Defendants accepted a mediator's proposal to settle this multidistrict litigation.

---

[1] In its Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Consolidated Class Action Settlement and Unopposed Motion to Substitute and Dismiss Certain Class Representatives, Provisional Certification of Proposed Settlement Classes, Approval of Notice Plan, and Approval of the Proposed Schedule for Completing the Settlement Process and Scheduling a Final Approval Hearing (hereinafter, the "Preliminary Approval Order"), the Court appointed J. Gerard Stranch, IV, Sarah Sterling Aldridge, and Charles J. LaDuca as Class Counsel. ECF No. 189 at PageID 3936.

[2] Capitalized terms have the same meanings set forth in the Amended Class Action Settlement Agreement and Release. *See* ECF No. 181-1.

On June 19, 2023, Plaintiffs submitted the executed Settlement Agreement (ECF No. 156-1) to the Court in connection with their Unopposed Motion for Preliminary Approval of Settlement, Provisional Certification of Proposed Settlement Classes, Approval of Notice Plan, and Approval of the Proposed Schedule for Completing the Settlement Process ("PA Motion"). ECF No. 155. Defendants supported that motion. ECF No. 164. The Settlement Agreement was amended on August 18, 2023 (ECF No. 181-1) based on guidance from the Court at the preliminary approval hearing on July 21, 2023. On October 27, 2023, Plaintiffs' PA Motion was granted. ECF No. 189.

As part of the settlement, Defendants will provide eligible Class Members with a $25 Family Dollar Gift card which: may be used to purchase any item sold at a Family Dollar stores (excluding prohibited or restricted items); is fully transferable; can be used in conjunction with other promotions or discounts (i.e., coupons and discounts); will not expire; does not require separate purchase or the use of the one's own money; and can be used over multiple discrete transactions until the value is exhausted.

As the Court acknowledged in its Preliminary Approval Order:

> The monetary recovery—a $25 Family Dollar Gift Card for each eligible Settlement Class Member who submits an approved claim—constitutes a significant portion of the maximum potential damages. (ECF No. 156 at PageID 3040.) Family Dollar also worked closely with the FDA to implement extensive remedial actions to help prevent issues like those alleged to have occurred at Distribution Center 202 from occurring again. (Id.) These corrective actions include, for example: the retention of a number of third-party consultants with expertise in food safety and regulatory compliance; the implementation of more than sixty Standard Operating Procedures addressing topics including, among others, integrated pest management, sanitation, employee training, food safety, and preventative maintenance; the creation of a large food safety department; and the

significant enhancement of compliance systems and processes throughout the organization.

ECF No. 189 at PageID 3939 40.  After the Preliminary Approval Order was entered, the Court-appointed Settlement Administrator, Angeion Group LLC ("Angeion"), emailed the long-form class notice to approximately 400,000 Class members, commenced publication notice through various media sources, and launched the Settlement website. *See* accompanying Declaration of Steven Weisbrot, Esq. ("Weisbrot Decl.") ¶¶ 8-15.  A reminder email notice was sent by Angeion to 440,889 potential class members on January 5, 2024. *Id.* at ¶10.

Reception of the proposed settlement and notice was favorable. Of the many thousands of class members who received notice, not a single person or entity filed an objection by the January 9, 2024 deadline, to: (1) the Settlement (or any aspect thereof), (2) the attorneys' fee request, (3) the request for service awards, or (4) the request for reimbursement of expenses. Weisbrot Decl. ¶ 24. Additionally, Defendants estimate that there are over one million households containing potential class members. *See* Exhibit A to Weisbrot Decl. at 6 ("CAFA Notice"). Of those only 66 potential Class members have sought to be excluded; and only 25 of those are valid.[3] Weisbrot Decl. ¶¶ 22, 23. That silence speaks volumes. If the Settlement were inadequate in some way, or the requests for attorneys' fees, expenses, or service awards unreasonable, at least some of the many thousands of Settlement Class members would have objected or sought to exclude themselves. That no one objected and only a handful of opt-outs were received is a testament to the excellent results achieved by Plaintiffs and Class Counsel in this hard-fought case.

---

[3] Of the 66 requests for exclusion, 41 requests fail to qualify under the Settlement because they either 1) do not indicate any purchase at an Affected Family Dollar store; or 2) do not establish residency in Alabama, Arkansas, Louisiana, Mississippi, Missouri or Tennessee. *See id*. Additionally, six duplicate opt-out requests were received. *Id.*.

As set forth in the PA Motion and Plaintiffs' Unopposed Motion for Attorney Fees, Expenses, and Service Awards ("Fee Motion") (ECF Nos. 155 and 194, respectively), all of which are incorporated here by reference, the Settlement is fair, adequate, and reasonable and therefore merits final approval under both Fed. R. Civ. P. 23(e)(2) and Sixth Circuit law. Counsel for both sides are highly experienced in consumer protection litigation and well-positioned to assess the risks and merits of the case.

In the face of material risks of an adverse outcome or the potential for lengthy delays and appeals, the Settlement represents a meaningful recovery for the Settlement Class. In addition, if approved, the recovery is not reduced in any way by the Attorneys' requests for fees and expenses (including administration costs), and service awards.

For these reasons, Plaintiffs respectfully request that the Court: (a) grant final approval to the Settlement pursuant to Federal Rule of Civil Procedure 23(e); (b) certify the provisionally-certified Settlement Class and appoint the 10 provisionally-appointed Class Representatives; and (c) enter a Final Judgment and Order terminating the litigation between Plaintiffs and Defendants, and releasing claims of Settlement Class members against Defendants.

## II.    BACKGROUND

### A.    Procedural Background.

The Parties engaged in extensive discovery, motion practice, much procedure, and various arguments before the Court. As the Court noted, the litigation here was complex and hard-fought. *See* ECF No. 189 at PageID 3943 ("This litigation fits squarely into that description—complex and unpredictable.").

Between February 2022 and June 2022, fourteen class action complaints were filed against Family Dollar in the United States District Courts for the Western District of Tennessee, the Southern District of Alabama, the Eastern District of Arkansas, the Western District of Louisiana,

the Southern District of Mississippi, the Western District of Missouri, and the Eastern District of Virginia, as well as in the Circuit Court of Pope County, Arkansas (subsequently removed to the Eastern District of Arkansas).

The actions allege that Family Dollar's West Memphis Distribution Center lacked proper pest control and exhibited unsanitary conditions leading to the presence of rodents in the Distribution Center. Each of the actions referenced an inspection report issued by the United States Food and Drug Administration ("FDA") concerning conditions at the Distribution Center.

On June 2, 2022, the Judicial Panel on Multidistrict Litigation ("MDL") centralized the actions to the Western District of Tennessee pursuant to 28 U.S.C. § 1407 and consolidated and captioned the case: *In re Family Dollar Stores, Inc., Pest Infestation Litigation*, No. 2:22-md-03032-SHL-TMP (ECF No. 1). A case filed by the State of Arkansas remained in state court, and thus was not transferred to the MDL.

On August 12, 2022 Plaintiffs filed a 69-page Consolidated Class Action Complaint ("Consolidated Complaint") alleging causes of action of negligence, negligence per se, negligent failure to warn, breach of implied warranty, unjust enrichment, fraudulent concealment and failure to disclose, redhibition, and violation of the consumer protection and deceptive trade practices acts of Alabama (Ala. Code § 8-19-1, *et seq*.), Arkansas (Ark. Code Ann. § 4-88-101, *et seq*.) ("ADTPA"), and Ark. Code Ann. § 16-118-107), Louisiana (La. Rev. Stat. § 51:1401, *et seq*.), Mississippi (Miss. Code Ann. § 75-24-1, *et seq*.), Missouri (Mo. Rev. Stat. § 407.101, *et seq*.), and Tennessee (Tenn. Code Ann. § 47-18-101, *et seq*.), as well as declaratory and injunctive relief. ECF No. 54. The Consolidated Complaint included eight exhibits. *Id*.

On September 26, 2022, Family Dollar moved to dismiss the Consolidated Complaint arguing lack of standing, that the FDA had primary jurisdiction, and that Plaintiffs' statutory and

common law claims could not be maintained. ECF No. 77. On September 26, 2022, Family Dollar also filed a Motion for Judicial Notice requesting the Court to take judicial notice of several documents. ECF No. 78.

On August 16, 2022, the Court entered an order allowing for a physical inspection of Family Dollar's Distribution Center. ECF No. 57.

On August 16, 2022, the Court entered an order adopting the Parties' proposed protective order. ECF No. 58.

On September 1, 2022, the Court entered an order adopting the Parties' ESI proposal. ECF No. 61.

On October 17, 2022, Plaintiffs filed an Amended Consolidated Class Action Complaint. ECF Nos. 83, 84 ("Amended Consolidated Complaint"). The Amended Consolidated Complaint included 23 exhibits (many of which were ascertained by Plaintiffs after serving numerous third-party discovery subpoenas and freedom of information act requests). *Id.*

On October 19, 2022, the Court entered an order concerning the disposal of products subject to Family Dollar's recall for 403 stores located in Alabama, Arkansas, Louisiana, Mississippi, Missouri, and Tennessee and which were currently being stored in approximately 90,000 bags, boxes, and totes. ECF Nos. 85, 86.

On October 20, 2022, Family Dollar moved to dismiss the Amended Consolidated Complaint and filed a Motion for Judicial Notice. ECF Nos. 89, 90. The Motion to Dismiss again argued lack of standing, that the FDA had primary jurisdiction, and that Plaintiffs' statutory and common law claims could not be maintained. *Id.*

On November 2, 2022, Plaintiffs filed an opposition to Family Dollar's Motion to Dismiss the Amended Consolidated Complaint and an opposition to Family Dollar's Motion for Judicial Notice. ECF Nos. 95, 96.

On December 20, 2022, a hearing took place concerning the Motion to Dismiss the Amended Consolidated Complaint. ECF No. 116.

On June 19, 2023, Plaintiffs filed an Unopposed Motion for Preliminary Approval. ECF Nos. 155, 156.

On June 30, 2023, Family Dollar filed a Motion in Support of Plaintiffs' Motion for Preliminary Approval. ECF No. 164.

On July 18, 2023, the Arkansas Attorney General moved to intervene, arguing, *inter alia*, that private litigants cannot resolve claims under the Arkansas Deceptive Trade Practices Act (the "ADPTA") on a class-wide basis. ECF No. 167-1 at PageID3262-63.

On July 21, 2023, a hearing took place concerning Plaintiffs' Motion for Preliminary Approval. ECF No. 170.

On July 28, 2023, the Parties filed oppositions to the Arkansas Attorney General's Motion to Intervene. ECF Nos. 172, 173. On August 10, 2023, a hearing took place concerning the Motion to Intervene. ECF No. 179. On August 30, 2023, the Court granted the Arkansas Attorney General's Motion to Intervene. ECF No. 182.

On September 8, 2023, the Arkansas Attorney General filed a Supplemental Brief, and argued again that the ADTPA prohibits class actions and class action settlements, and the Settlement was inadequate because it: 1) limited gift cards to one per household; 2) had a cumbersome claims process; 3) inured to the benefit of Defendants; and 4) contained a "clear sailing" attorneys' fees provision. ECF No. 183 at PageID 3790, 3796-99. The Attorney General

also challenged whether the Settlement met the requirements of Fed. R. Civ. P. 23(e)(2). *Id.* at 3899-3804.

On October 27, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval and rejected the Arkansas Attorney General's objections and challenges. ECF No. 189.

On January 4, 2024, Plaintiffs filed a Motion for Attorneys' Fees, Costs, and Service Awards. ECF No. 194. Since the filing of their Motion for Attorneys' Fees, Plaintiffs discovered that an additional $502 in expenses and 139.80 hours were inadvertently omitted from their fee application. *See* Decl. of J. Gerard Stranch, IV ("Stranch Decl."), ¶¶ 2, 10-11. Additionally, Class Counsel has spent an additional 201.4 hours working on final approval and claims administration. *Id.* As a result, as described more fully in Section II. D. 3 herein, Plaintiffs modify their request for attorneys' fees and expenses to reflect these additional amounts.

On January 8, 2024, Defendants filed a Statement in Response to Plaintiffs' Motion for Attorneys' Fees/Expenses/Service Awards. ECF No. 196.

### B.    Plaintiffs Engaged in Extensive Discovery.

Prior to filing this matter, Class Counsel undertook an extensive investigation of the alleged issues and prepared for protracted litigation. During the litigation, among other things, Class Counsel:

a.    investigated the underlying factual background regarding the pest infestation;

b.    reviewed federal regulations and regulators' investigations into similar circumstances;

c.    interviewed Plaintiffs and other consumers;

d.    conducted investigations of witnesses at the Distribution Center and worked with a confidential witness;

e.    developed the legal theories of the case;

f.    investigated and researched applicable legal standards;

g.    drafted, among other things, complaints and amended complaints, protective order, ESI order, motion for physical inspection, motion to dismiss, settlement materials, notice and preliminary approval materials, and responded to the Arkansas Attorney General;

h.    prepared for and defended numerous fact depositions;

i.    issued discovery requests (request for admission, interrogatories, request for the production of documents) and reviewed responsive materials (more than 24,000 pages of documents);

j.    responded to discovery requests (with more than 6,000 pages);

k.    issued third-party subpoenas and reviewed responsive materials;

l.    drafted Freedom of Information Act and state information act requests and reviewed responsive materials;

m.    reviewed FDA materials;

n.    met and conferred with Family Dollar's counsel;

o.    worked with numerous experts and disclosed them to Family Dollar;

p.    reviewed and analyzed numerous experts disclosed by Family Dollar;

q.    inspected the Distribution Center with an expert.

r.    participated in two arm's-length mediations;

s.    interviewed and selected a notice provider;

t.    worked with Defendants to establish an effective and efficient claims protocols and methods for the administration of the settlement;

u.    prepared and attended hearings and Court conferences;

v.    coordinated this Multidistrict Litigation; and

w.    communicated with clients and other Plaintiffs' counsel.

*See* Declaration of G. Stranch, ECF No. 195 at PageID 3990-91. In its Preliminarily Approval Order, the Court recognized that Plaintiffs "undertook significant discovery efforts during the pendency of the case[.]" ECF No. 189 at PageID 3922. Class Counsel has substantial experience in prosecuting class actions, particularly those involving consumer claims as alleged here. As part

of their investigation, Class Counsel assembled a uniquely qualified team of experts to assist in this litigation.

### C.    The Parties Negotiated the Settlement.

As the litigation progressed through motion practice and discovery, the Parties commenced settlement negotiations, taking into account the case's strengths and weaknesses.

On November 9, 2022, the Parties engaged in an initial mediation session overseen by experienced and impartial mediator Randall W. Wulff of Wulff Quinby Sochynsky. Settlement Agreement, ECF No. 181-1 at ¶ 2.7.

On April 18, 2023, the Parties engaged in a second mediation session overseen by retired Tennessee Supreme Court Chief Justice Janice M. Holder from the Tennessee Academy of Mediators & Arbitrators. *Id*. at ¶ 2.12. After a day's long mediation session, the Parties accepted a mediators' proposal and reached a settlement in principle. Thereafter, the Parties continued to negotiate and finalize the details of the Settlement.

### D.    Terms of the Settlement Agreement.

#### 1.    Class Definition.

On October 27, 2023, the Court conditionally certified the following Class for purposes of this Settlement only:

>  a.      All persons who reside within Arkansas, Alabama, Louisiana, Mississippi, Missouri, or Tennessee, and, from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store.

>  b.      Excluded from the Settlement Class are (i) Defendants; (ii) Defendants' agents, parents, officers, predecessors, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants; (iii) Class Counsel and any other attorneys who represent Settlement Class Representatives or the Settlement Class in this Action, as well as their agents and employees; (iv) the judicial officers and court staff assigned to this case, as well as

their immediate family members; and (v) Persons who timely request to be excluded from this Settlement as provided in Paragraph 9.

ECF No. 189 at PageID 3946.

### 2. Benefits to Class Members.

Eligible Class Members are entitled to receive a $25 Family Dollar Gift Card. As the Court

recognized:

> The monetary recovery—a $25 Family Dollar Gift Card for each eligible Settlement Class Member who submits an approved claim—constitutes a significant portion of the maximum potential damages. (ECF No. 156 at PageID 3040.) Family Dollar also worked closely with the FDA to implement extensive remedial actions to help prevent issues like those alleged to have occurred at Distribution Center 202 from occurring again. (Id.) These corrective actions include, for example: the retention of a number of third-party consultants with expertise in food safety and regulatory compliance; the implementation of more than sixty Standard Operating Procedures addressing topics including, among others, integrated pest management, sanitation, employee training, food safety, and preventative maintenance; the creation of a large food safety department; and the significant enhancement of compliance systems and processes throughout the organization.

Id. at PageID 3939-40.

The Gift Cards, which are limited to one per household:

a.   may be used to purchase any item sold at Family Dollar stores, excluding purchases "prohibited or restricted by state law (such as alcohol and tobacco);"

b.   are fully transferable;

c.   can be used in conjunction with other promotions or discounts, including manufacturers' coupons and discounts;

d.   will not expire;

e.   do not require separate purchase or the use of the Settlement Class Member's money; and

f.   can be used over multiple discrete transactions until the value is exhausted.

ECF No. 181-1 at ¶¶ 1.14, 4.1, 4.2.

### 3. Fees, Costs, and Service Awards.

Pursuant to the Settlement Agreement, Plaintiffs applied to the Court for an award of attorneys' fees and expenses of $10,247,087.77 on January 4, 2024. ECF No. 194. In addition, Plaintiffs seek the maximum Service Award provided for by the Settlement Agreement. *Id.* Defendants do not oppose Plaintiffs' requests for fees or service awards. ECF No. 196.

After submitting their initial motion for fees, Plaintiffs discovered that an additional $502 in expenses and an additional 139.80 hours from co-counsel amounting to an additional lodestar of $55,357.50 were inadvertently omitted from Plaintiffs' fee application. Stranch Decl., ¶¶ 2, 10-11. Since the date of their fee application, Class Counsel has also undertaken an additional 201.4 hours (amounting to $163,270.80 in lodestar) in connection with final approval and claims administration. *Id.*, ¶ 2. In total, this brings the total number of hours spent litigating this matter to 6,468.25 with a lodestar of $5,147,257.92 and $247,589.77 in expenses. *Id.* ¶¶ 7, 11. As a result, Plaintiffs respectfully modify the fees and expenses requested in their original fee petition (ECF No. 194) as follows: $10,000,000 in attorney's fees and $247,589.77 in expenses.

Accounting for this additional lodestar, Plaintiffs' counsel's requested multiplier drops to approximately 1.9. *Id.* ¶ 9. Again, this multiplier will continue to drop as Plaintiffs' counsel continue to incur lodestar related to the remaining work on this matter.

As explained by Professor Brian T. Fitzpatrick, Professor of Law at Vanderbilt Law School, this requested multiplier is squarely within the normal range for those class action fee awards based on the lodestar method. Decl. of Brian T. Fitzpatrick ("Fitzpatrick Decl."), ¶¶ 8-13. Professor Fitzpatrick draws from his own research and other empirical studies of fee awards to demonstrate that "the typical multiplier is somewhere between the low 1.0's to the high 1.0's." *Id.* ¶ 8. Particularly when examining consumer protection cases, Professor Fitzpatrick notes, the average multiplier is on the higher end of that range. *Id.* ¶¶ 10-13. Apart from being in the main

range, economic incentive theory strongly supports that the requested multiplier is reasonable in this context. *Id.* ¶¶ 14-15. Indeed, the substantial risk undertaken by Plaintiffs' counsel and the serious possibility of losing this case on a motion to dismiss, summary judgment, or at trial strongly supports that the correct multiplier is even higher than the one requested by Plaintiffs' counsel. *Id.* ¶ 15. In short, the requested fee and multiplier should not present a serious obstacle to settlement of this case – it is plainly reasonable as part of the agreed-on Settlement Agreement, the substantial work Plaintiffs' counsel performed, the excellent results, and the substantial risk undertaken.

###    E.    The Settlement Was Well Received.

The benefits offered in the Settlement were well received. There were zero objections filed and only 66 requests for exclusion. Weisbrot Decl. ¶¶ 22, 24. Of the opt-outs received, only 25 requests for satisfied the claims' requirements for exclusion; the other 41 requests failed to meet the threshold requirements to either qualify as a Settlement Class Member or meet the opt-out requirements laid out in the Court's Preliminary Approval Order. *See id.* at ¶_23;   ECF No. 189 at Page ID 3946-47.

###    F.    Efforts Were Made to Maximize Notice.

According to the Court's Preliminary Approval Order, the Court found that the "Notice fully satisf[ied] the requirements of due process, provide[d] the best notice practicable under the circumstances to the members of the Class, and provide[d] individual notice to all members of the Class who can be identified through reasonable effort." ECF No. 189 at PageID 3946.

Class Counsel worked with Family Dollar and the notice provider, Angeion, a nationally recognized class notice firm, to develop and implement a customized plan for distribution of the Settlement. The Court approved Angeion to carry out and implement the Notice Plan, which included:

direct email notice, digital advertising, publication in People magazine circulated in Alabama, Arkansas, Louisiana, Mississippi, Missouri, and Tennessee, and paid Google advertising. Class Members with:

> (1)    generalized information about the Settlement, its scope, and its remedies, with a clickable table of contents; answers to frequently asked questions; a contact information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Class Counsel;

> (2)    deadlines for opting out of or objecting to the Settlement, and the dates of relevant Court proceedings, including the Final Approval Hearing;

> (3)    a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class;

> (4)    information on making a claim and a downloadable and online version of the Claim Form; and

> (5)    relevant legal documents like this Settlement, the Amended Consolidated Class Action Complaint, the signed order of Preliminary Approval, notices, and (when it becomes available) Plaintiffs' application for an Attorneys' Fees and Expenses Award and/or an application for Service Awards.

There will also be a toll-free telephone line to inform members the Settlement Class about their rights and options.

*Id*. at PageID 3944.

Defendants estimate that there are over one million households containing potential class members, CAFA Notice at 6,  and Direct Notice via email was provided to over 440,000 class members. Weisbrot Decl. at ¶ 9. Although not part of the original Notice Plan, the Parties agreed to have Angeion send a reminder email notice to 440,889 potential class members whose initial Email Notice was deliverable and had not already submitted a Claim Form on January 5, 2024. Weisbrot Decl. at ¶ 10. The media notice campaign received 25,060,982 total impressions, with

an approximate reach of 80.62%.[4] *Id*. at ¶ 12. As of January 16, 2024, the Settlement Website, www.FDwarehousesettlement.com, has received 1,260,492 website visits by 1,188,645 unique users, totaling 1,445,191 pageviews. *Id*.

Settlement Class Members were given "sixty calendar days from the Notice Date to submit their Claim Forms … which is adequate and sufficient time." ECF No. 189 at PageID 3947. To date approximately 945,680 claims have been submitted. Weisbrot Decl. at ¶ 19.[5]

## III.    THE PROVISIONALLY-CERTIFIED SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED AND THE CLASS REPRESENTATIVES FINALLY APPOINTED

In its Preliminary Approval Order, the Court undertook a detailed analysis of each of the elements of Rules 23(a) and 23(b)(3) and, because Plaintiffs satisfied all of them, provisionally certified the following Class:

> All persons who reside within Arkansas, Alabama, Louisiana, Mississippi, Missouri, or Tennessee, and, from January 1, 2020, through February 18, 2022, inclusive, purchased any product from an Affected Family Dollar Store. Excluded from the Settlement Class are (i) Defendants; (ii) Defendants' agents, parents, officers, predecessors, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants; (iii) Class Counsel and any other attorneys who represent Settlement Class Representatives or the Settlement Class in this Action, as well as their agents and employees; (iv) the judicial officers and court staff assigned to this case, as well as their immediate family members; and (v) Persons who timely request to be excluded from this Settlement as provided in Paragraph 9.

ECF No. 189 at PageID 3930, 3946. The Court also undertook a detailed analysis of the contributions of the Class Representatives and provisionally appointed them. *Id*. at PageID 3936-

---

[4] "Total Impressions" indicates the number of times a banner ad is placed over the course of an overall campaign. Steven Weisbrot, *Is Digital the New Print in Class Action Notification Programs*, LINKEDIN, Apr. 14, 2015, https://www.linkedin.com/pulse/digital-new-print-class-action-notification-programs-steven-weisbrot. "Reach" indicates the number of people who were exposed to the media notice. *Id.*

[5] Of these, approximately 752,643 have been identified as potentially fraudulent and are subject to further review. *Id.*  Approximately 193,037 claims have been identified as potentially valid. All claims are subject to a final audit by Angeion. *Id.*

37. Finally, the Court found that Class Counsel was adequate pursuant to Fed. R. Civ. P. 23(g). *Id.* at PageID 3935-36. For the same reasons the Court granted provisional approval, the Court should grant final certification to the Class and finally appoint the Class Representatives and Class Counsel so that the Settlement may be affected.

## IV.    THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND SIXTH CIRCUIT LAW

The Settlement satisfies the four factors under Fed. R. Civ. P. 23(e)(2) for determining whether a settlement is "fair, reasonable, and adequate," namely that: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arm's length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D).

Sixth Circuit law, which has similar standards, favors and encourages settlements— particularly in class actions and other complex matters where the inherent costs, delays, and risks of protracted litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("*UAW*") (noting "the federal policy favoring settlement of class actions").

### A.    The Settlement Satisfies Each of the Rule 23(e) Factors.

#### 1.  The Class Received More than Adequate Representation.

Class Counsel and the Class Representatives more than adequately represented the Class, satisfying the first prong of Rule 23(e). As set forth in extensive detail in Plaintiffs' Motion for Preliminary Approval, Supplemental Submission, and Fee Motion—and the supporting papers to each of those filings—Class Counsel aggressively litigated this case for more nearly two years,

and the Class Representatives made significant contributions to the prosecution of the case. *See* ECF Nos. 155, 181, 194, and accompanying papers.

> The Court has already found that Class Counsel
>
> belong to established plaintiff-side class action firms; their experience in handling class actions is beyond dispute. They have demonstrated sufficient knowledge of the applicable law throughout the case and have successfully navigated this case to the settlement stage. Proposed Counsel has already invested hundreds of thousands of dollars' worth of their time and resources in litigating the case, and the Court expects that they will continue to do so.

ECF No. 189 at PageID 3936.

The Court has also found that the Class Representatives are appropriate, recognizing that they "fairly and adequately protect the interests of the class" and have fulfilled their duties throughout the litigation, including participating in discovery and sitting for depositions." *Id*. at PageID 3937.

### 2. The Settlement Was the Product of Arm's Length Negotiation.

The Settlement was negotiated at arm's length, satisfying Rule 23(e)'s second requirement. The Settlement was the result of two separate mediation sessions with two separate mediators. *Id*. at 3938. After a day's long mediation session with Justice Holder on April 18, 2023, the Parties accepted a mediator's proposal, and continued to engage to discuss settlement terms and exchange settlement proposals until an agreement on material terms was reached on June 16, 2023. ECF No. 156-2 at PageID 3178. Because extensive discovery had taken place before the second mediation, Class Counsel were also well-informed about the strengths of the claims asserted when negotiating the Settlement. ECF No. 189 at PageID 3938. As the Court found in granting preliminary approval:

> The Court also finds that the Settlement Agreement was negotiated at arm's length. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citation omitted). The Court is aware of no evidence in the record to rebut this presumption. Because the Settlement "arose out of arms-length, non-collusive negotiations[,]" the Settlement Agreement is the product of a

procedurally fair process. Wm. B. Rubinstein, Newberg and Rubenstein on Class
Actions § 13.14 (6th ed. 2022).

*Id.* at PageID 3939. Because there is "no evidence – or even a suggestion – that the Settlement was

a product of fraud or collusion, … this factor favors approval of the Settlement." *Karpik v.*

*Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 U.S. Dist. LEXIS 38641, at *16 (S.D. Ohio

Feb. 18, 2021).

### 3.  The Settlement Provides Excellent Benefits to the Class.

Rule 23(e) requires that the relief provided to a class be "adequate." Here, the relief

provided in the Settlement is excellent. As the Court found in granting preliminary approval:

> The monetary recovery—a $25 Family Dollar Gift Card for each eligible
> Settlement Class Member who submits an approved claim—constitutes a
> significant portion of the maximum potential damages. Family Dollar also worked
> closely with the FDA to implement extensive remedial actions to help prevent
> issues like those alleged to have occurred at Distribution Center 202 from occurring
> again. These corrective actions include, for example: the retention of a number of
> third-party consultants with expertise in food safety and regulatory compliance; the
> implementation of more than sixty Standard Operating Procedures addressing
> topics including, among others, integrated pest management, sanitation, employee
> training, food safety, and preventative maintenance; the creation of a large food
> safety department; and the significant enhancement of compliance systems and
> processes throughout the organization.

ECF No. 189 at PageID 3939-40 (internal citations omitted). The Court also recognized that the

Settlement "allows class members to avoid the significant risks and uncertainties inherent in trials

and appeals." *Id.* at PageID 3940.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval

are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert

B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002). The Settlement offers immediate,

significant, and substantial relief to all Class Members who submit a valid claim, delivering real

value to Class Members in the face of an uncertain litigation outcome. Under any analysis, the

relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation.

### 4.   The Settlement Treats Class Members Equitably.

As required by the fourth prong of Rule 23(e), the Settlement treats members of the Settlement Class equitably relative to each other. The Settlement ensures that approved claimants receive a fully transferable, non-expirable $25 Family Dollar Gift Card upon the Effective Date of the Settlement, as overseen by Angeion and uses the same claims form and requirements for each Class Member. *See* ECF No. 181-1 at PageID 3526. As the Court concluded in its Preliminary Approval Order, "The proposed allocation appears to be fair and equitable." ECF No. 189 at PageID 3941.

As the Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to Class Representatives," *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *26 (E.D. Mich. Sep. 2, 2010), it satisfies this prong of Rule 23(e), as well.

### B.    Evaluation of the *UAW* Factors Similarly Supports Final Settlement Approval.

The Sixth Circuit's factors for considering a settlement's fairness, reasonableness, and adequacy overlap with the Rule 23(e) factors: (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation; (3) amount of discovery engaged in by the parties; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest. *See UAW*, 497 F.3d at 631. As demonstrated below, each factor supports final approval.

### 1.   The Settlement Was Not the Product of Fraud or Collusion.

As discussed above, the Settlement here was reached after more than a year of hard-fought litigation between experienced counsel and with the assistance of two preeminent mediators. ECF

No. 156-2 at PageID 3178.; *see*, *e.g.*, *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2012 U.S. Dist. LEXIS 83703, at *18, n. 6 (E.D. Tenn. June 15, 2012) (noting that the participation of a mediator helps support the court's conclusion that settlement negotiations were made at arm's length). And as noted by the Court in the Preliminary Approval order, there is no evidence in the record to support a finding of fraud or collusion. ECF No. 189 at PageID 3939. Rather, the substantial relief, the arm's-length nature of the negotiations, and the participation of sophisticated counsel and experienced mediators support a finding that the proposed Settlement has no obvious deficiencies and fairly treats all members of the Settlement Class.

### 2. The Complexity, Expense, and Likely Duration of the Litigation Counsel in Favor of Final Approval.

"'Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.'" *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *16 (quoting *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *8 (S.D. Ohio Dec. 3, 2019)). This class action is no different, as acknowledged by the Court because it "involves multiple state legal frameworks and jurisdictions, and a complex web of Defendants' intermingled business entities." ECF No. 189 at PageID 3941. As a result, absent settlement, litigation would continue "for a considerable time," *id.*, which would certainly be an involved and expensive process.

"[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Big Lots, Inc. S'holder Litig.*, No. 2:12-cv-445, 2018 U.S. Dist. LEXIS 244649, at *9 (S.D. Ohio Aug. 28, 2018) (quoting *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *10 (S.D. Ohio Aug. 18, 2009)). While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendants, as well

as the risks inherent to continued litigation. The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a valid claim. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation.

### 3. The Parties Engaged in Substantial Discovery, Counselling in Favor of Final Approval.

As recited in the Amended Settlement Agreement, the Parties engaged in extensive discovery, including, but not limited to:

- Class Counsel negotiated and filed a protective order;

- Class Counsel negotiated and filed an ESI order;

- Class Counsel served 18 interrogatories, 58 requests for admission, and 46 document requests on each Defendant;

- Defendants responded to the written discovery and produced more than 24,000 pages of documents;

- Defendants served 48 document requests upon Settlement Class Representatives which resulted in a combined total of more than 6,000 pages of documents produced;

- Defendants deposed, and Class Counsel defended, seven Settlement Class Representatives;

- Plaintiffs served numerous third-party subpoenas and Freedom of Information Act requests;

- Plaintiffs inspected the Distribution Center with an expert;

- Plaintiffs disclosed four expert witnesses; and

- Defendants disclosed six experts.

ECF No. 181-1 at PageID 3522. Indeed, the Court found, "With extensive fact discovery and multiple depositions complete, proposed Class Counsel were well-informed about the facts and strengths of the claims asserted when the second mediation began." ECF No. 189 at PageID 3938

(internal citation omitted); *see* also *id.* at PageID 3922 (recognizing that Plaintiffs "undertook significant discovery efforts during the pendency of the case[.]"). This factor, therefore, supports final approval.

### 4. The Likelihood of Success on the Merits Was Not Certain, Counselling in Favor of Final Approval.

Plaintiffs' success was far from certain in this complex class action. Defendants were represented by highly-skilled and experienced litigators from a leading defense law firm, and Defendants aggressively defended themselves throughout the case. As the Court found in granting preliminary approval:

> Defendants would likely have asserted various arguments and defenses at trial, and a jury trial might well turn on questions of proof, many of which would be the subject of dueling expert testimony, particularly regarding causation and damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 ("The prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation."). The Court cannot readily determine what the outcome of this case would be if it were fully litigated. The uncertainty as to the outcome weighs in favor of approving this Settlement.

*Id.* at PageID 3940. As a result, this factor weighs in favor of final approval.

### 5. Class Counsel and the Class Representatives All Support the Settlement.

Class Counsel and the Class Representatives all support the Settlement as indicated by their signatures to the Settlement Agreement. ECF No. 181-1 at Page ID 3548-57. This factor, too, counsels in favor of finally approving the Settlement.

### 6. The Reaction of Absent Class Members Dictates in Favor of Final Approval.

An "overwhelming positive class response highlights the fairness of the settlements to unnamed class members and weighs heavily in favor of approval of the settlements." *See Milk*, 2012 U.S. Dist. LEXIS 83703, at *15. As of the date of this filing, there have been ***zero*** objections

to the Settlement.[6] Weisbrot Decl. ¶ 23. Moreover, only 25 valid requests for exclusion were received. Weisbrot Decl. ¶ 23. This minimal number of exclusions is less than .05% of all claims received (excluding potentially fraudulent claims). This silence speaks volumes about the significance of the relief obtained here by Class Counsel and Plaintiffs and, of course, the satisfaction of class members. *See, e.g.*, *Office & Prof'l Emps. Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 311 F.R.D. 447, 458 (E.D. Mich. 2015) (objection from "[o]nly one class member" is an "extremely minimal level of opposition" and "is an indication of [the] settlement's fairness") (internal quotation marks omitted); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of Class Members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'").

The near "unanimous approval of the proposed settlements by the class members is entitled to nearly diapositive weight in the court's evaluation of the proposed settlements." *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983). The fact that the settlement has received 66 opt outs and no objections is very strong evidence that the Settlement merits final approval. Thus, this factor weighs in favor of granting final approval.

### 7. Final Approval of the Settlement Would Be Consistent with the Public's Interest in Encouraging Private Litigants to Combat Anticompetitive Conduct.

"There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Does 1–2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (citation

---

[6] This excludes the previously overruled objections by the Arkansas Attorney General. *See generally*, ECF No. 189 (overruling objections).

omitted). As the Court found in granting preliminary approval, "This litigation fits squarely into that description—complex and unpredictable." ECF No. 189 at PageID 3943.

The Settlement offers real benefits in the form of a fully-transferable, non-expirable $25 Family Dollar Gift Card and eliminates further expensive litigation. As this Court noted, this represents a "significant portion of the maximum potential damages." *Id*. at PageID 3939. Importantly, Family Dollar has worked closely with the United States Food and Drug Administration to implement extensive remedial actions to prevent issues like those alleged to have occurred at the West Memphis Distribution Center from occurring in the future. ECF No. 181-1 at PageID 3523. Thus, the public interest has been served.

## V.    NOTICE WAS PROPER UNDER RULE 23 AND SATISFIED DUE PROCESS

The extensive notice here satisfied due process requirements. "[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P.

23(c)(2)(B).

For all the reasons set forth in the Court's Preliminary Approval Order, the notice program and forms of notice utilized by Plaintiffs satisfy these requirements. *See* ECF No. 189 at PageID 3943-44. The notice set forth all information required by Rule 23(c)(2)(B) and 23(e)(1) and informed the Class about (1) the settlement terms; (2) the right to object and the manner for objecting to the settlement and Class Counsel's request for fees, expenses, and service awards; (3) information on making a claim and a downloadable and online version of the Claim Form; and (5) relevant legal documents like this Settlement, the Amended Consolidated Class Action Complaint, the signed order of Preliminary Approval, notices, and Plaintiffs' application for an Attorneys' Fees and Expenses Award and for Service Awards. ECF No. 181-1 at PageID 3580–81.

Pursuant to the notice plan approved in the PA Order, Angeion undertook a multi-pronged campaign:

- Angeion created and continues to maintain a dedicated Settlement Website (www.FDwarehousesettlement.com) where the notice was (and continues to be) posted. Weisbrot Decl. ¶ 15. The website had at least 1,188,645 views by unique users. Weisbrot Decl. ¶ 16.

- A toll-free telephone number was also established to inform members of the Settlement Class with responses to frequently asked questions and provide essential information regarding the Settlement. Weisbrot Decl. ¶ 17.

- Direct Notice by email was delivered to 444,382 email addresses on November 10, 2023, and a reminder email notice was delivered to 440,611 email addresses on January 5, 2024. Weisbrot Decl. ¶¶ 9,10.

- Angeion also implemented a media notice campaign comprised of display advertising and a paid search campaign. Weisbrot Decl. ¶ 11. This media notice exceeded initial expectations by delivering an approximate 80.62% reach with average frequency of 5.91 times, by serving a total of 25,060,982 impressions. Weisbrot Decl. ¶ 12.

- Angeion also caused notice to be published in the December 4, 2023 edition of People Magazine for magazines distributed in Mississippi, Arkansas, Louisiana, Alabama, Tennessee, and Missouri. Weisbrot Decl. ¶ 14.

The content of and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process.

## VI.    NOTICE WAS PROVIDED UNDER THE CLASS ACTION FAIRNESS ACT

The Class Action Fairness Act, 28 U.S.C. § 1715, et seq. ("CAFA") requires that Defendants notify appropriate state and federal officials of the proposed settlement and to allow 90 days to pass before final approval of the proposed settlement may be entered. *See* 28 U.S.C. § 1715(d). CAFA notice was provided to the Attorneys General of Arkansas, Alabama, Louisiana, Mississippi, Missouri, and Tennessee, as well as the U.S. Attorney General on June 29, 2023, and supplemental notice was sent on August 25, 2023, advising them of modifications made to the Settlement. Weisbrot Decl. ¶ 5, 6. More than 90 days have passed since CAFA notice was distributed.

## VII.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court grant final approval of the presented Settlement and enter final judgment.

Dated: February 8, 2024.                    Respectfully submitted,

*/s/J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 27203
Tel: (615) 254-8801
gstranch@stranchlaw.com

Sarah Sterling Aldridge
John W. ("Don") Barrett
Barrett Law Group, P.A.
404 Court Square N
P.O. Box 927
Lexington, MS 39095
Tel: (662) 834-2488
saldridge@barrettlawgroup.com

dbarrett@barrettlawgroup.com

Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
4725 Wisconsin Ave., NW, Ste. 200
Washington, DC 20016
Tel: (202) 789-3960
charles@cuneolaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I, J. Gerard Stranch, IV, hereby certify that the foregoing Plaintiffs' Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Proposed Settlement and Supplement to Plaintiffs' Unopposed Motion for Attorneys' Fees, Expenses and Service Awards was served on February 8, 2024, the Court's ECF system to the following:

Christopher Chorba
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213-229-7000
Facsimile: 213-229-7520
cchorba@gibsondunn.com

Jason R. Meltzer
Jesenka Mrdjenovic
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: 202-955-8500
Facsimile: 202-467-0539
jmeltzer@gibsondunn.com
jmrdjenovic@gibsondunn.com

*Attorneys for Defendants*

Kate Donoven Ark. Bar No. 98189
Senior Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Phone: (501) 682-3647
Fax: (501) 682-8118
Kate.Donoven@arkansasag.gov

*Counsel for Intervenor*

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV